UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVID STOCKMAN,

       Petitioner,

                           CASE NO. 2:10-CV-14860

v.                         HONORABLE LAWRENCE P. ZATKOFF
                           UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

       Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS**

      John David Stockman, ("Petitioner"), confined at the Chippewa Correctional Facility in

Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In his *pro se* application, petitioner challenges his convictions of two counts of first-degree criminal

sexual conduct, M.C.L. § 750.520b(1)(a), and one count of accosting a child for immoral purposes,

M.C.L. § 750.145a. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

      Petitioner was convicted of the above offenses following a jury trial in the Wayne County

Circuit Court. The child complainant lived with her grandmother, Joyce Baldwin-O'Dell, grandfather,

Lee Baldwin, mother, Jody Baldwin-Roby, and a boarder named Mark Stabler who occupied the

basement of a house located in Dearborn Heights, Michigan. (Tr. 9/25/2003, pp. 18, 58-59).

Petitioner frequented the house and had a prior relationship with the child complainant's mother. (*Id.*,

pp. 20, 61-62, 71). On the day in question, petitioner was at the house when Joyce Baldwin-O'Dell

borrowed his truck to take someone home and go to the doughnut shop. (Tr. 9/23/2003, pp. 74-75).

The child complainant testified that while her grandmother was gone, she was left alone with the petitioner. (*Id.*, p. 35). Petitioner alleges that the occupant of the basement was present at all times. The child complainant testified that while in the livingroom watching T.V., petitioner pushed her down on the couch, removed his clothing, and told her to "get on." (*Id.*, pp. 23, 32-34). She also testified that he later removed her Power Puff dress and panties, pushed her on the bed in her room, removed his clothing, and got on top of her. (*Id.*, pp. 37-38). He also licked the area where the "pee pee" comes out. (*Id.*, pp. 39-40). He also retrieved a baster, "gravy thing," from the kitchen and "put that up here...[pointed to her genital area]." When asked what that area is used for, the child witness indicated for "using the bathroom...where pee pee comes out[.]" (*Id.*, pp.26-27).

Dr. Hon Lee testified at petitioner's trial that he examined the victim for sexual abuse, but his examination turned up no evidence of trauma or sexually transmitted disease. Dr. Lee could not determine from his examination whether an object had been inserted into the victim's genital area. Dr. Lee testified that he would not normally see evidence of cunnilingus during a medical examination. Dr. Lee testified that he might or might not see some kind of injury if an object had been inserted into the victim's vagina. Dr. Lee testified that the examination of the victim was normal but he could not rule out sexual abuse because of the passage of time between the abuse and the examination. (Tr. 9/25/03, pp. 105-09). Following a jury trial, petitioner was convicted of two counts of CSC 1 and accosting a minor for immoral purposes.

Petitioner's conviction was affirmed on appeal. *People v. Stockman,* No. 251711, * 3-4 (Mich.Ct.App. March 22, 2005); *lv. den.* 404 Mich. 906, 705 N.W. 2d 131 (2005).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which the trial court denied. *People v. Stockman,* No. 03-007369-01 (Wayne

County Circuit Court, February 10, 2006). The Michigan Court of Appeals denied petitioner's application for leave to appeal. *People v. Stockman,* No. 269343 (Mich.Ct.App. October 11, 2006). The Michigan Supreme Court remanded the case back to the Michigan Court of Appeals, to consider whether affidavits submitted by Dr. Hon Lee and Dr. Mark Richter raised a "significant possibility that petitioner was actually innocent."  Appellate counsel earlier obtained the affidavits from Dr. Lee, who testified at trial, and Dr. Mark Richter, who did not testify at trial but who signed an affidavit provided to him by appellate counsel after a consultation.  The Michigan Supreme Court denied petitioner's application for leave to appeal with respect to his remaining claims. *People v. Stockman,* 478 Mich. 923, 732 N.W. 2d 903 (2007).  On remand, the Michigan Court of Appeals held that the affidavits from Drs. Lee and Richter did not establish petitioner's actual innocence. *People v. Stockman,* No. 278901 (Mich.Ct.App. December 18, 2008).  The Michigan Supreme Court subsequently remanded the case to the trial court to conduct an evidentiary hearing concerning petitioner's claims that counsel was ineffective for failing to investigate and present evidence that the victim's allegations were medically impossible. *People v. Stockman,* 485 Mich. 981, 774 N.W. 2d 920 (2009).

Pursuant to the order, the trial judge conducted an evidentiary hearing.  At the evidentiary hearing, both Drs. Lee and Richter admitted that they had not read the child complainant's trial testimony and had based their affidavits on the assumption of a "deep" sexual penetration with the turkey baster.  The trial judge denied petitioner's post-conviction motion, finding that the doctors had disavowed their affidavits that the victim's medical testimony was medically impossible and held that it was not unreasonable for trial counsel to rely on the trial testimony of Dr. Lee that there was no trauma to the child complainant's vaginal area in order to support his theory that the charges had been

3

fabricated. (Tr. 4/29/10, pp. 99-109).  Following the remand, the Michigan Supreme Court denied petitioner leave to appeal. *People v. Stockman,* 487 Mich. 851, 784 N.W. 2d 210 (2010).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.  Mr. Stockman was denied his 6th and 14th amendment right to effective assistance of counsel where defense failed to investigate and present medical testimony that the child complainant's allegations are medically implausible, as described in the testimony of Drs. Lee, Richter and Nazer...

II.  The prosecutor's comments in closing arguments violated Mr. Stockman's fifth and fourteenth amendment right to remain silent and irrevocable tainted the fact finding role of the jury.

III. Mr. Stockman was denied his 6th and 14th amendment right to confrontation when the trial court failed to administer the oath and promise to tell the truth to Joneisha Baldwin.

IV. The due process clause of the 14th amendment was violated to the extent that the state failed to supply the defense with a video tape of the "Kid's Talk" interview and the Child Protective Order for trial in violation of Brady v Maryland [sic].

V.  The prosecution failed to present sufficient evidence of guilt beyond a reasonable [sic] in violation of the due process clause of the fourteenth amendment...

VI. The trial court violated the eight and fourteenth amendments in imposing sentencing above the sentencing guideline range and by using the same basis for the departure as the basis used to score the base level departed from...

VII. The trial court's sentence imposing additional penalties for factors not specifically found by the jury violates the sixth amendment...

VIII. Mr. Stockman was denied his sixth and fourteenth amendment right to the effective assistance of counsel where trial counsel failed to (A) object to the "Bad Man" evidence, and; [sic] (B) seek DNA or other forensic testing of the turkey baster...

IX. Mr. Stockman asserts that his actual innocence overcomes procedual [sic] bars in habeas claims II through VIII, as well as providing a substantive claim entitling him to relief.

4

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly established
> > Federal law, as determined by the Supreme Court of the
> > United States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

law or if the state court decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the law

of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court

may not "issue the writ simply because that court concludes in its independent judgment that

the relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

5

'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  Discussion

### A.  Claims # 1 and # 8.  The ineffective assistance of counsel claims.

The Court will consolidate petitioner's first and eighth claims for judicial economy. In his first claim, petitioner alleges that trial counsel was ineffective for failing to investigate and present medical testimony that the child complainant's allegations were medically implausible, as described in the affidavits of Drs. Lee and Richter.  In his eighth claim, petitioner contends that trial counsel was ineffective for failing to object to "bad man" evidence and for failing to seek DNA or other forensic testing of the turkey baster.

In *Strickland v. Washington,* 466 U.S. at 668 (1984), the Supreme Court established

6

a two-pronged test for determining whether a criminal defendant has received ineffective assistance of counsel.  First, the convicted person must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473

(2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast

8

doubt on a trial that took place" ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner alleges that trial counsel was ineffective when he failed to present evidence that 1) the child's allegations were medically implausible, and 2)  a DNA analysis of the turkey baster would either have revealed the presence or absence of cells from the child contained within the inner lip of the turkey baster. He also claims that counsel should have objected to the admission of bad acts testimony pertaining to drug use.

Defense counsel must investigate all appropriately substantial defenses available to the defendant and must assert them in a timely manner. *See Fornash v. Marshall*, 686 F. 2d 1179, 1187 (6th Cir. 1982).  The right to the effective assistance of counsel is violated where, through his or her own ineffectiveness or incompetence, defense counsel deprives a criminal defendant of a substantial defense. *See Williams v. Abshire*, 544 F. Supp. 315, 318 (E.D. Mich. 1982).

Petitioner's primary contention appears to be that his trial counsel was ineffective in failing to call an expert witness to challenge the findings of the prosecution's medical expert that the victim could have been sexually assaulted absent physical findings at the time of her physical examination.  Based on this allegation and the supporting medical affidavits presented with his motion from relief from judgment, the Michigan Supreme Court remanded the case back to the trial court to conduct an evidentiary hearing to determine whether trial counsel was ineffective for failing to investigate and present medical testimony that the child complainant's allegations were medically impossible.

At the evidentiary hearing, Dr. Lee noted that the victim's testimony did not include

the way it was inserted, nor the force and speed that it was inserted. (Evidentiary Hearing (EH), April 29, 2010, p 60). Dr. Lee testified that his statement that J.B.'s testimony was "medically impossible" was based on "a worst case scenario." (*Id.*, p. 61). During cross-examination, Dr. Lee admitted that "if the turkey baster was inserted into this six-year old just a quarter of an inch" it would not leave an injury. (*Id.*, p. 62). He went on to explain that because the sensation of pain is individualized, he could not tell the depth of the penetration based on the complainant's description of pain in her abdomen. (*Id.*, p. 63). Dr. Lee concluded his testimony by stating that he could not stand behind the conclusion in his affidavit that the complainant's testimony was medically impossible. (*Id.*, p. 66).

Doctor Richter testified that he reviewed the information provided to him by petitioner's appellate counsel when he signed the affidavit, that he did not review the testimony of the victim, and that "in retrospect" he should have reviewed the victim's testimony before submitting the affidavit. (*Id.*, pp. 18, 29-31). Richter's affidavit was based on the conclusion that a turkey baster was inserted deep into a six year old child's vaginal opening. (*Id.*, p. 23). It also assumed a vaginal insertion with an instrument the size and composition of a plastic turkey baster, to the point of the abdomen. (*Id.*, p. 24). He also admitted that his opinion was based on "the worst case scenario." (*Id*., p. 40). On cross-examination, Dr. Richter testified that if the turkey baster were inserted a quarter-inch or half-inch deep, he would not expect to find any trauma after one month. (*Id*., p 45). Dr. Richter also noted that such an insertion could cause the victim to suffer pain in her abdomen due to "a tremendous number of nerve endings in the anal/genital area...that can give a kind of bladder spasm..." (*Id.*, p. 46). The allegations contained within the affidavits of Drs. Lee and

Richter were evaluated during the evidentiary hearing and found to be inconsistent with the facts provided at trial by the child complainant. The subsequent testimony taken at the evidentiary hearing undermined petitioner's contention of fabrication of the incident by the child complainant. Furthermore, Dr. Nazer testified for the prosecution stating that only five–percent of cases produce physical findings of sexual abuse, due to the amount of time from the abuse, findings would not be present, and stomach pains are characteristic of child victims experiencing something that is beyond their comprehension. (*Id.*, pp. 71-77).

When provided with the facts as alleged at trial, Drs. Lee and Richter admitted that the conclusions contained in their respective affidavits were not based on the facts as presented at trial and that they would not stand behind their respective affidavits in light of the testimony presented by the child complainant. Moreover, Dr. Richter's testimony would have undermined defense counsel's theory because he testified that a penetration of a quarter or half an inch would not have left any marks, but could have caused stomach pains in the child complainant's abdomen. (*Id.,* p. 46). Being that Dr. Nazer testified for the prosecution and neither of the other two witnesses would testify that the sexual assault was medically impossible as alleged by the petitioner, trial counsel was not ineffective for not presenting this defense at trial.

Furthermore, in light of the fact that neither Drs. Lee or Richter could testify conclusively that the allegations were medically impossible, trial counsel's failure to investigate a defense of medical impossibility or for failing to obtain Dr. Lee's medical reports prior to trial did not result in prejudice. *See Tucker v. Cason*, 393 Fed. Appx. 334, 339-40 (6th Cir. 2010)(Given expert testimony that child victim's good sphincter tone was not

11

necessarily inconsistent with sexual abuse and the lack of any other information contained in the medical records relevant to the charges of conviction, it was not reasonably probable that jury would have reached a different conclusion had child's medical records been presented at criminal sexual conduct trial; thus, defense counsel's failure to obtain the records resulted in no prejudice to defendant and consequently, his performance, regardless of whether it was up to professional standards, did not constitute ineffective assistance under *Strickland*). Petitioner has failed to establish that trial counsel failed to raise a viable defense or that he was prejudiced by not receiving the Dr. Lee's medical records prior to trial. Counsel had obtained all of the information needed from Dr. Lee, based on Dr. Lee's examination, and was working from the premise that absence of physical findings would conclude that the sexual assault did not happen.

As a general rule, whether or not defense counsel should have hired a medical expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *See Murden v. Artuz,* 253 F. Supp. 2d 376, 389 (E.D.N.Y. 2001). In order to obtain habeas relief, petitioner must show that had counsel presented the medical testimony at his trial, there would have been a reasonable probability of a different outcome. *See Pondexter v. Dretke,* 346 F. 3d 142, 148 (5th Cir. 2003). Upon review of the testimony presented at the evidentiary hearing, neither medical witness would have testified favorably for petitioner. In rejecting petitioner's ineffective assistance of counsel claim, the trial court indicated that it did not believe that there was a reasonable probability that the testimony of Drs. Lee or Richter would have affected the outcome of petitioner's trial. Petitioner is not entitled to habeas relief on his first claim.

In his eighth claim, petitioner next alleges that trial counsel was ineffective for failing to object to bad acts evidence which showed that petitioner and others frequented and used drugs in the house which the child complainant shared with her grandmother and other family members.

In the present case, even in the absence of the "other acts" evidence that petitioner contends should have been excluded, petitioner was not prejudiced by testimony that linked him and all of the other adult witnesses to frequenting the house to do drugs.  Considering that  the witnesses for the prosecution were also drug users, petitioner would not have been prejudiced by testimony elicited about drug use at the residence.  Furthermore, The Michigan Court of Appeals found on direct review that the admission of this "other acts" evidence was harmless error, due to the additional evidence of petitioner's guilt; thus, counsel's failure to object to the admission of this evidence did not prejudice petitioner. *Stockman,* No.  251711, Slip. Op. at * 2.

In light of the significant amount of evidence of guilt in this case, the Michigan Court of Appeals' conclusion that the admission of this "other acts" evidence was harmless error at most was not an unreasonable application of clearly established law so as to entitle petitioner to habeas relief. *See Ford v. Curtis,* 277 F. 3d 806, 811 (6th Cir. 2002); *See also Bower v. Curtis,* 118 Fed. Appx. 901, 907-08 (6th Cir. 2004).  Moreover, "[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004)(internal quotation omitted).  Since the admission of this "other acts" evidence was harmless error at most, petitioner was not prejudiced by counsel's failure to

13

object to the admission of this evidence.

Petitioner's last allegation pertaining to his ineffective assistance of counsel claim alleges that trial counsel was ineffective for failing to seek DNA testing of the turkey baster that petitioner utilized to sexually penetrate the child victim. At best, absence of the complainant's cells would been inconclusive, being that the baster was found washed and in a kitchen drawer. At worst, the baster may have been found to contain cells which would assist in proving the prosecution's claim that petitioner penetrated the child complainant with the turkey baster. Trial counsel chose to rely on the testimony of Mark Stabler, the alibi witness, and Dr. Lee's report that the child complainant did not have any vaginal injuries in arguing that the absence of physical findings would be inconsistent with the allegation that petitioner penetrated the child complaint with a turkey baster. Trial counsel's decision to utilize an alibi witness and focus on an absence of physical findings to create doubt, in lieu of having the turkey baster tested for DNA is a valid strategic decision that defeats petitioner's final ineffective assistance of counsel claim. *See e.g. Hall v. U.S.,* 41 Fed.Appx. 743, 745 (6th Cir. 2002)(Defense counsel's alleged error in failing to obtain a DNA test to show that defendant was not involved in a scheme to have an impersonator examined by a nurse to satisfy the requirements of the intended murder victim's insurance policy involved a strategic decision that did not rise to the level of a viable Sixth Amendment claim, particularly where there was no evidence that a sample was available for DNA testing). Petitioner's final claim that trial counsel was ineffective is without merit.

### B. Claims # 2. The prosecutorial misconduct claim.

Petitioner next alleges that the prosecutor committed misconduct by commenting on

14

his pre-arrest silence following the reporting of the incident by the complainant.

It is unclear that "clearly established federal law" prohibits the use of a criminal defendant's pre-arrest silence as substantive evidence of guilt. In *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980), the United States Supreme Court held that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of a defendant's pre-arrest silence to impeach that defendant's credibility, since the "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." *Id.* However, the Supreme Court indicated that their decision in *Jenkins* did not consider whether or under what circumstances pre-arrest silence may be protected by the Fifth Amendment. *Id*. at 236, n. 2.

The Sixth Circuit, however, has held that the use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir.2000). However, the Sixth Circuit acknowledged that the Supreme Court in *Jenkins* never addressed the issue of whether the use of pre-arrest silence as substantive evidence violated the Fifth Amendment. *Id*. at 281. The Sixth Circuit further noted that the federal circuits that had considered the issue were "equally divided" over whether a defendant's pre-arrest silence could be used as substantive evidence of guilt. *Combs*, 205 F.3d at 282 (collecting cases). Another judge in this district has held that a criminal defendant's pre-arrest silence is not afforded "conclusive protection." *Martin v. Jabe,* 747 F.Supp. 1227, 1233 (E.D. Mich.1989).

A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state

court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir.2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeal, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

In the present case, the United States Supreme Court has not spoken dispositively on the issue of whether the use of a criminal defendant's pre-arrest silence as substantive evidence violates the Fifth or Fourteenth Amendments. The Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" among the federal courts concerning the resolution of this issue, precludes this Court from finding that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, where clearly established Supreme Court precedent on the issue of using pre-arrest silence as substantive evidence of guilt did not, and does not, exist. *See Worden v. McLemore,* 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002). Due to lack of Supreme Court precedent on the use of a defendant's pre-arrest silence as substantive evidence of guilt, the state trial court's admission of evidence of petitioner's pre-arrest silence as substantive evidence of guilt was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent addressing the Fifth Amendment right to remain silent and the Fourteenth Amendment right to due process so as to warrant federal habeas relief. *See Bond v. McQuiggan,* 506 Fed. Appx. 493, 498 (6th Cir. 2012); *Mitchell v. Lafler,* 118 Fed. Appx. 24, 26-27 (6th Cir.2004); *Cameron v. Birkett,* 348 F.Supp.2d 825, 841-42 (E.D. Mich.2004). Petitioner is not entitled to habeas relief on his second claim.

16

**C.  Claim # 3.  The claim involving the failure to administer the oath.**

Petitioner next alleges that the trial court erred by not administering the oath to tell the truth to the child complainant.  Although the trial judge made a determination that the child complainant was competent to testify and understood the difference between telling the truth and telling a lie, the judge failed to administer an oath to the child complainant to tell the truth or obtain a promise from her that she would do so.  The Michigan Court of Appeals, finding the claim unpreserved at trial, denied relief as follows:

> While defendant attempted to challenge the complainant's competency as a witness by asking questions on voir dire, defendant did not object to the court's failure to administer an oath or obtain a promise to tell the truth. The court determined that the witness was competent after the witness demonstrated that she knew the difference between the truth and a lie, and that she understood that it is good to tell the truth and bad to lie. While the court should have gone on to ascertain that the witness understood that she had to tell the truth in court, we conclude that the obligation was sufficiently inherent in the circumstances.

*Stockman*, Slip. Op. at * 2-3.

"[T]here is no constitutionally or statutorily required form of oath." *United States v. Ward*, 989 F.2d 1015, 1019 (9th Cir. 1992). Given the lack of holdings by the Supreme Court on the issue of what constitutes a proper form of oath for a witness, the Michigan Court of Appeals' rejection of petitioner's third claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008).  Petitioner is not entitled to habeas relief on his third claim.

**D.  Claim # 4.  Prosecutorial failure to turn over the "kids talk" interview.**

Petitioner's fourth habeas claim alleges that the prosecution failed to provide the "kid talk" interview with the child complainant.  The Michigan Court of Appeals found the claim

17

to be without merit:

> Defendant next asserts that his due process rights were violated when the prosecution failed to supply the defense with a video tape of the "Kids Talk" forensic interview and child protective services file before trial. We disagree.
>
> Defendant presents no support for a finding that these items were intentionally withheld, that they were exculpatory, or that defendant was in any way prejudiced by the failure to produce them. We find no basis for reversal.
>
> *Stockman*, No. 251711, Slip. Op. at * 3.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner is not entitled to habeas relief on his claim because he has failed to offer any evidence or argument to show any of this evidence contained exculpatory material. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).

Petitioner claims that he was entitled to a copy of the video tape of the "kids talk" interview with the child complainant and that the tape would have refuted the child complainant's "specific allegation of a deep vaginal insertion." However, the notion of a "deep vaginal insertion" was refuted at the post-trial evidentiary hearing. Dr. Richter admitted that his assumption of a "deep" penetration came from petitioner's appellate counsel, not from the victim's testimony. (EH, p 18). Moreover, both Drs. Lee and Richter conceded that even a slight penetration of J.B.'s vaginal area could have caused her to feel a sensation of pain in her stomach. (*Id.,* pp 46, 63). Additionally, Dr. Dena Nazer explained that child sexual abuse victims often describe the pain associated with sexual assaults connected to a pain in their abdomen because what they are experiencing is beyond their ability to comprehend. (*Id.*, p 77). Simply put, there was no allegation of a "deep vaginal insertion" made by the victim. Rather, this was as assumption of Dr. Richter that was based on the representations of petitioner's appellate counsel. Other than petitioner's speculation, there is nothing to suggest that this tape is actually exculpatory.

Petitioner has failed to show that any of this evidence exculpated him of this crime. Petitioner is therefore not entitled to habeas relief on his *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

**E. Claim # 5. Sufficiency of the evidence.**

Petitioner claims that the convictions are not supported by the evidence produced at trial.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

19

307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

The Michigan Court of Appeals found sufficient evidence to support petitioner's convictions on all accounts:

20

In order to prove a defendant guilty of CSC I with a person under the age of thirteen, the prosecutor must prove that defendant: 1) engaged in sexual penetration with another person, 2) who is under thirteen years of age. *People v Hammons,* 210 Mich App 554, 557; 534 NW2d 183 (1995). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(o).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's convictions. The complainant's testimony established that defendant "got the thing" that is used for "[p]ut[ting] gravy on the chicken" and put it "up here," indicating her genital area. She described the area as the part she used when "[u]sing the bathroom," and the part "where pee comes out." In addition, defendant told the complainant that he had inserted the item "where pee comes out." The complainant felt the "gravy thing" inside her "like it was in [her] stomach." She indicated that it hurt when defendant placed the "gravy thing" inside her. This testimony was sufficient to establish the element of penetration.

Sufficient evidence also established that defendant penetrated the complainant through cunnilingus. An act of cunnilingus, by definition, involves an act of sexual penetration. MCL 750.520a(o); *People v Legg,* 197 Mich App 131, 132-133; 494 NW2d 797 (1992). Cunnilingus requires the placing of the mouth of a person upon the external genital organs of the female that lie between the labia, the labia itself, or the mons pubes. *Id*. In *Legg,* this Court found sufficient evidence of penetration where the complainant testified that the defendant touched "(t)he part (of her body) that [she] go[es] to the bathroom with" with his mouth. *Id*. at 133. The Court held that the defendant's touching with his mouth of the urethral opening, vaginal opening, or labia established cunnilingus. Similarly, in the instant case, the complainant testified that defendant "licked" her "[r]ight here," indicating her genital area, while they were on the bed. Similar to the complainant in *Legg,* the complainant indicated that defendant licked her "where your pee comes out." Thus, the evidence supported defendant's CSC I conviction involving cunnilingus.

With respect to defendant's conviction of accosting a child for immoral purposes, any "person who accosts, entices, or solicits a child less than 16 years of age with the intent to induce or force that child . . . to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or any other act of depravity or delinquency," or shall suggest to such child any of those acts is guilty of a felony. MCL 750.145a; *People v Meyers*, 250 Mich App 637, 639; 649 NW2d 123 (2002). Defendant contends that complainant's testimony was not specific enough to warrant conviction. Viewing the evidence in the light most favorable to the prosecution, the complainant testified that while they were in the living room, defendant pushed her down on the couch and took off his pants and his "panties". He then instructed the complainant to "get on," but she did not know what he was talking about. This evidence sufficed to prove the

essential elements of accosting a child for immoral purposes.

*Stockman*, No. 251711, Slip. Op. at 3-4.

As an initial matter, to the extent that petitioner claims that the evidence is legally insufficient because the victim's testimony was not credible, petitioner would not be entitled to habeas relief on this basis. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6ᵗʰ Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6ᵗʰ Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Moreover, the fact that the victim's testimony was uncorroborated by medical evidence does not render the evidence in this case insufficient. The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6ᵗʰ Cir. 2000)(*citing Gilbert v. Parke,* 763 F. 2d 821, 826 (6ᵗʰ Cir. 1985)).

The Michigan Court of Appeals' conclusions on the first-degree criminal sexual conduct convictions involving the child complainant are supported by the record and are objectively reasonable. Consequently, the Michigan Court of Appeals' conclusion that the evidence was sufficient to sustain petitioner's convictions was not an unreasonable application of *Jackson*, and petitioner has no right to habeas relief on the basis of his fifth claim. *See Sanders v. McKee,* 276 F. Supp. 2d 691, 697 (E.D. Mich. 2003).

**F. Claims # 6 and # 7. The sentencing claims.**

The Court will discuss petitioner's sentencing claims together for judicial economy.

In his sixth claim, petitioner contends that the trial court improperly departed above the

22

sentencing guidelines range.

Petitioner's claim that the court departed above the sentencing guidelines range is not cognizable on federal habeas review. *See Tironi v. Birkett,* 252 F. Appx. 724, 725 (6th Cir.2007); *Howard v. White*, 76 F. Appx 52, 53 (6th Cir.2003); *Whitfield v. Martin*, 157 F.Supp.2d 758, 762 (E.D.Mich.2001). Petitioner has "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence," see *Mitchell v. Vasbinder*, 644 F.Supp.2d 846, 867 (E.D.Mich.2009), and "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F.Supp.2d 474, 485 (E.D.Mich.2004). Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range therefore does not entitle him to habeas relief. *See Austin v. Jackson,* 213 F.3d 298, 301 (6th Cir.2000).

In his related seventh claim, petitioner contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner as a justification to depart above the sentencing guidelines range.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 ( 2013). *Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the

23

Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 133 S. Ct. at 2157-58.

At the time of petitioner's conviction and sentence, *Harris* was good law. In addition, there is no indication that the Supreme Court made their holding in *Alleyne* retroactive to cases on collateral review. *See e.g. Simpson v. U.S.,* --- F. 3d ----, 2013 WL 3455876, * 1 (7th Cir. July 10, 2013); *See also Gibson v. Tribley,* No. 10-13364, 2013 WL 3353905, * 8 (E.D. Mich. July 3, 2013). A federal district court may only grant habeas relief if it finds that the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir.2012) (quoting 28 U.S.C. § 2254(d)). In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Id*. (citing *Williams v. Taylor*, 529 U.S. at 380). Because the Supreme Court at the time of petitioner's conviction did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, petitioner is not entitled to habeas relief on his seventh claim. *Gibson,* 2013 WL 3353905*,* Slip. Op. at * 8.

### G. Claim # 9. The actual innocence claim.

In his ninth claim, petitioner contends that he is entitled to habeas relief because he is actually innocent of the charges upon which he was convicted.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual

innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999). Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases). Therefore, petitioner is not entitled to relief on his ninth claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be

25

debatable. *See Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).  The Court will also

deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Myers v.*

*Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.**

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma*

*pauperis*.                                            S/Lawrence P. Zatkoff
                                                       **HON. LAWRENCE P. ZATKOFF**
**Dated: December 31, 2013**            **UNITED STATES DISTRICT JUDGE**